UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLIS SMITH-NUNLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00058-SNLJ |
| | ) | |
| JASON LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is a petition under 28 U.S.C. § 2254 for writ of habeas corpus. Petitioner Willis Smith-Nunley is an inmate at the South East Correctional Center near Charleston, Missouri. In 2014, Smith-Nunley was convicted by a jury on one count of second-degree murder, in violation of Section 565.021 RSMo., two counts of armed criminal action, in violation of Section 571.015, RSMo., and one count of first-degree robbery, in violation of Section 570.023, RSMo. The trial court sentenced Smith-Nunley to life in prison for the second-degree murder charge, a consecutive term of life on the first count of armed criminal action, and two concurrent terms of 15 years on the first-degree robbery charge and the second count of armed criminal action. The conviction and sentence were affirmed on direct appeal (Resp. Ex. E), Smith-Nunley's Rule 29.15 motion was denied by the trial court (Resp. Ex. H, pp. 43-58), and the Rule 29.15 denial was affirmed on appeal (Resp. Ex. J).

In his petition before this Court, Smith-Nunley raises five grounds for relief: 1) trial error in the admittance of evidence; 2) violation of the Fifth Amendment Double

1

Jeopardy Clause; 3) ineffective assistance of counsel—failure to call an alibi witness; 4) ineffective assistance of counsel—failure to move for severance of trial; and 5) ineffective assistance of counsel—failure to inform about a purported conflict-of-interest.

This Court will deny the petition. Smith-Nunley failed to present his first and second grounds for relief in state court, so he is procedurally barred from doing so in this proceeding. The third, fourth, and fifth grounds for relief were previously raised in state court where the Missouri Court of Appeals denied the claims on their merits. This Court will defer to those decisions under 28 U.S.C. § 2254(d).

**I. STATEMENT OF EXHIBITS**

In support of this memorandum, this Court cites the following exhibits as set out in the response to show cause, ECF #12.

1. Respondent's Exhibit E is a copy of the Missouri Court of Appeals' decision affirming the conviction and sentence.

2. Respondent's Exhibit F is a copy of the legal file from Smith-Nunley's state post-conviction appeal.

3. Respondent's Exhibit H is Smith-Nunley's brief on post-conviction appeal.

4. Respondent's Exhibit I is a copy of the State's brief on post-conviction appeal.

5. Respondent's Exhibit J is a copy of the Missouri Court of Appeals' decision affirming the denial of post-conviction relief.

**II. FACTUAL BACKGROUND**

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual

issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. 2254(e). During Smith-Nunley's appeal of his conviction and sentence, the Missouri Court of Appeals summarized the relevant facts as follows:

> Willis Smith-Nunley (Defendant) appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after a jury found him guilty of one count of murder in the second degree, two counts of armed criminal action, and one count of robbery in the first degree. Defendant claims that the trial court plainly erred in: (1) admitting into evidence a 911 telephone call containing testimonial statements; and (2) entering judgment and sentencing him for two counts of armed criminal action in violation of double jeopardy principles.
>
> …
>
> Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: On January 14, 2012, Defendant, his co-defendant, Travis Nunley, and Wanekii Weems drove a white Monte Carlo to 4317 Swan Street to purchase heroin. Defendant carried a shotgun, and Mr. Nunley carried a handgun. When they arrived at 4317 Swan Street, Ms. Weems and Mr. Nunley entered the house and Defendant waited outside. Approximately ten people, including Rafael Allred, were inside playing cards, smoking marijuana, and drinking beer. Unable to purchase the heroin, Ms. Weems exited the house and returned to the white Monte Carlo, but Mr. Nunley remained inside and began firing his gun. Defendant also began firing his gun as he approached the house. Defendant entered the home, pointed his shotgun at Mr. Allred's face, and demanded he "give [him] what [he] got." Mr. Allred handed Defendant approximately fifty codeine pills. As they exited the house, Defendant and Mr. Nunley continued to fire their guns. At some point during the shooting outside of the house, Defendant shot and killed Jerald Massey. Defendant and Mr. Nunley entered the white Monte Carlo, and Ms. Weems drove away.
>
> …
>
> The trial court held a joint trial at which the State presented the testimony of several witnesses, including Ms. Weems, Mr. Allred, and Detectives Jared Bright and Clinton Bertke, who responded to the incident. Ms. Weems testified that, after the incident, Defendant told her that he "thought

that he killed that dude." Mr. Allred testified that he identified, from a photographic line-up presented to him by the police, Defendant as the man who pointed a shotgun in his face and took his codeine pills. Detective Bright testified that while he was en route to 4317 Swan Street, dispatch sent a district-wide update that a 911-caller observed a white Monte Carlo with tinted windows "speeding from the scene." Detective Bright observed a white Monte Carlo matching the description traveling in the opposite direction of his vehicle at approximately 40 miles per hour over the speed limit, and he unsuccessfully attempted to stop the vehicle. Detective Bertke testified that during his investigation of the incident, he listened to the 911 telephone call regarding the white Monte Carlo. The prosecutor requested to play the 911 telephone call to the jury. Defendant's counsel did not object, and the trial court granted the prosecutor's request. The 911 telephone call contained the following statements

> [Operator]: 911. This is Travis.
> [Caller]: Yeah, I've been hearing some gunshots outside.
> [Operator]: Where is it located at, Sir?
> [Caller]: Um, 4319 um I'm on Swan in Tower Grove. And somebody probably got shot outside. But I've seen a white Monte Carlo with tinted windows driving off.
> [Operator]: Ok. White Monte Carlo. Which direction was it going?
> [Caller]: Ummm –
> [Operator]: Like towards Tower Grove or Newstead?
> [Caller]: It was going towards umm back towards Kingshighway.
> [Operator]: Towards Kingshighway?
> [Caller]: Yes.
> [Operator]: Ok. You think the shots occurred on your block?
> [Caller]: Yes, they did.
> [Operator]: And you said on the 4300 block of Swan?
> [Caller]: Yes. Yes, they did.
> [Operator]: Alright. So, I'm going to get an officer in the area. Alright?
> [Caller]: Ok.
> [Operator]: Alright.

Following the presentation of all evidence, the trial court instructed the jury that to find Defendant guilty of murder in the second degree in Count I, it had to find that Defendant committed robbery in the first degree, Mr. Massey was shot, and Mr. Massey was killed as a result of the perpetration of that robbery in the first degree. The trial court instructed the jury that if it

4

> found Defendant committed murder in the second degree and that he committed the offense by, with, or through the knowing use of a deadly weapon, then it would find Defendant guilty of Count II for armed criminal action. In regard to Count V, the trial court told the jury that to find Defendant guilty of robbery in the first degree, it had to find that Defendant took prescription pills from Mr. Allred, in doing so he threatened the immediate use of physical force against Mr. Allred, and he was armed with a deadly weapon. The trial court also instructed the jury that to find Defendant guilty of armed criminal action in Count VI, it had to find that Defendant committed robbery in the first degree, by, with, or through the knowing use of a deadly weapon.
>
> The jury found Defendant guilty of murder in the second degree, robbery in the first degree, and both counts of armed criminal action. The trial court sentenced Defendant as a prior offender to consecutive life sentences for murder and the associated armed criminal action, to run concurrently with two sentences of fifteen years' imprisonment for robbery and the associated armed criminal action. Defendant appeals.

(Resp. Ex. E, pp. 2-5).

## III. ANALYSIS

### A. Smith-Nunley's First Ground for Relief is Procedurally Defaulted.

Smith-Nunley's first claim, that the trial court erred in admitting into evidence the 911 call, was not presented during the state post-conviction proceedings; therefore, it is procedurally defaulted. *See Bittick v. Nixon*, 187 F.3d 640 (8th Cir. 1999) (failure to present claim that state trial court erroneously admitted evidence constituted procedural default). While it is true the Missouri Court of Appeals reviewed this claim for plain error, (Resp. Ex. E, p. 5), "the state court's discretionary plain-error review of [an] unpreserved claim[] cannot excuse [the] procedural default." *Clark v. Bertsch*, 780 F.3d 873, 876 (8th Cir. 2015) (resolving earlier "split of panel authority" regarding whether plain-error review waives a procedural default and deciding that it does not). Having not

5

shown cause or prejudice for the default, nor having demonstrated that there will be a fundamental miscarriage of justice, this claim is denied. *See Stephen v. Smith*, 963 F.3d 795, 799 (8th Cir. 2020) (noting the court could "not reach [petitioner's] claim" unless he "shows cause and prejudice or that he is actually innocent of the charges," and refusing to consider the claim where petitioner "makes no attempt to meet these standards").

### B. Smith-Nunley's Second Ground for Relief is Procedurally Defaulted.

Smith-Nunley's second claim, that his rights under the Fifth Amendment Double Jeopardy Clause were violated, was not presented during the state post-conviction proceedings; therefore, it is procedurally defaulted. *See Wallace v. Lockhart*, 12 F.3d 823, 826 (8th Cir. 1994) (failure to present Double Jeopardy claim to state courts constituted procedural default). While it is true the Missouri Court of Appeals reviewed this claim for plain error, (Resp. Ex. E, p. 5), "the state court's discretionary plain-error review of [an] unpreserved claim[] cannot excuse [the] procedural default." *Clark*, 780 F.3d at 876. Having not shown cause or prejudice for the default, nor having demonstrated that there will be a fundamental miscarriage of justice, this claim will be denied. *See Stephen*, 963 F.3d at 799.

### C. Trial Counsel was not Ineffective for Failing to Call an Alibi Witness. This Court Defers to the Missouri Court of Appeals' Decision on This Issue (Responds to the Third Ground for Relief).

In his third ground for relief, Smith-Nunley argues that his trial counsel was ineffective because trial counsel "fail[ed] to call at trial Danielle Jones, an alibi witness, … [who would have testified] that Smith-Nunley was not present at the scene of the crime[.]" Smith-Nunley raised this claim during his state post-conviction appeal (Resp.

6

Ex. H, pp. 14, 19-24), and the Missouri Court of Appeals denied it. (Resp. Ex. J, pp. 4-7). Claims that have been previously adjudicated on the merits in state court "shall not be granted" relief unless the state court's decision contradicted or unreasonably applied clearly-established federal law or resulted in an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The Missouri Court of Appeals applied the proper standard for evaluating whether counsel was ineffective. (Resp. Ex. J, p. 4); *see Strickland v. Washington*, 466 U.S. 668 (1984). To succeed under the *Strickland* ineffectiveness standard, a petitioner must show that counsel's conduct fell below reasonable professional standards and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistances." *Id*. at 689.

Smith-Nunley failed to show counsel's conduct was unreasonable or that he was prejudiced by counsel's actions. The Missouri Court of Appeals explained why trial counsel declined to call Jones as an alibi witness:

> Trial Counsel established it was part of her trial strategy not to call Ms. Jones. This decision was based on her assessment that the alibi was not very good, Ms. Jones would not have held up on cross examination, and she thought it would be damaging to her case to call Ms. Jones as a witness. When Ms. Jones testified at the evidentiary hearing, she admitted that the first person she told about the alibi was Trial Counsel's partner ("Partner"). When questioned by the police, she never even mentioned the story about Movant and his codefendant having a "fish fry" at her house during the time of the shooting. As Partner pointed out when he testified at the hearing, one should first mention an alibi when being questioned by police, not at trial. Further, Ms. Jones was Movant's girlfriend. *See State v.*

7

> *Hamilton*, 791 S.W.2d 789, 798 (Mo. App. E.D. 1990) (finding the motion court had not clearly erred where both potential alibi witnesses had a motive to commit perjury and their testimonies contained certain inconsistencies). Based on these facts, we cannot conclude that Trial Counsel's performance lacked the customary skill and diligence of a reasonably competent attorney.
>
> Movant argues that Ms. Jones's testimony would have held up to cross examination "because it did hold up to cross examination." This assertion is without merit. On cross examination Ms. Jones admitted that she never told the police about the "alibi." Ms. Jones was also confronted with Ms. Yarbrough's contradictory statement, to which her only response was "I wasn't aware of that." Ms. Yarbrough's contradictory statement was made to police questioning her about her white Monte Carlo, the car used on the night of the robbery. She told the officers that Movant's co-defendant took her vehicle throughout the day (January 14th) and did not return until the next day around 5 p.m. The fact that someone, whom Ms. Jones said was with her at the "fish fry," told a contradictory story to police further refutes Movant's argument that Ms. Jones's testimony would have held up on cross-examination at trial. It also shows the reasonableness of Trial Counsel's decision not to call Ms. Jones as a witness.

(Resp. Ex. J, pp. 5-6). At this stage, Smith-Nunley has done nothing more than repeat the points on appeal from his post-conviction briefing—in fact, he simply copies the pages and attaches them to his petition. He does nothing to expand on his arguments. And this Court finds nothing about the Missouri Court of Appeals' decision contrary to clearly-established federal law or based on an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d). Accordingly, this Court will defer to the Missouri Court of Appeals' decision on this issue and denies Smith-Nunley's third ground for relief.

  D. **Trial Counsel was not Ineffective for Failing to Move for Severance of the Trial. This Court Defers to the Missouri Court of Appeals' Decision on This Issue (Responds to the Fourth Ground for Relief).**

In his fourth ground for relief, Smith-Nunley argues that his trial counsel was ineffective because trial counsel "fail[ed] to file a motion to severe Smith-Nunley's case

8

from his brother's[.]" Smith-Nunley raised this claim during his state post-conviction appeal (Resp. Ex. H, pp. 16, 25-30), and the Missouri Court of Appeals denied it. (Resp. Ex. J, 7-11). Claims that have been previously adjudicated on the merits in state court "shall not be granted" relief unless the state court's decision contradicted or unreasonably applied clearly-established federal law or resulted in an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The Missouri Court of Appeals applied the proper standard for evaluating whether counsel was ineffective. (Resp. Ex. J, p. 4); *see Strickland*, 466 U.S. 668. The *Strickland* ineffectiveness standard is set forth above in Section C.

Smith-Nunley failed to show counsel's conduct was unreasonable or that he was prejudiced by counsel's actions. The Missouri Court of Appeals explained why trial counsel did not err in choosing not to move to sever the trial:

> A defendant moving for severance must make "a particularized showing of substantial prejudice" from the codefendants being tried together. *State v. Tate*, 658 S.W.2d 940, 946 (Mo. App. E.D. 1983) (citing Section 545.885.2). Courts grant motions to sever only where there is a serious risk of compromising a defendant's rights or the jury's ability to make a fair judgment. *Merrill*, 990 S.W.2d at 174. Further, joint trials play a vital role in the criminal justice system, furthering the interests of justice by avoiding inconsistent verdicts and leading to more accurate assessments of relative culpability. *Id*. And where the same evidence would be admissible against codefendants in separate trials, and the co-defendants' defenses are not irreconcilable, it is not an abuse of discretion to deny a motion to sever. *State v. Oliver*, 791 S.W.2d 782, 786 (Mo. App. E.D. 1990).
> …
> We first address Movant's argument that there was a reasonable probability a motion to sever would have been granted because it would be an abuse of discretion not to grant the motion. In our analysis, we note this Court's prior holding in *Oliver*, *supra*, and find that it would not have been an abuse of discretion for the trial court to deny a motion to sever. *See Oliver*, 791 S.W.2d at 786; *see also State v. Kidd*, 990 S.W.2d 175, 182 (Mo. App.

9

W.D. 1999) (it is not necessary to sever joint trials where the defenses are not incompatible). Here, Trial Counsel established at the evidentiary hearing that Movant and his co-defendant were asserting the same defense, that they "didn't do it." Further, Movant was charged with his co-defendant, so even if the cases were severed, all of the same evidence would be admissible against Movant. Trial Counsel's Partner established at the evidentiary hearing that he found there were no grounds to file a motion to sever. Both Trial Counsel and her partner were reasonable in believing that the motion court would not have granted a motion to sever. Trial counsel cannot be found ineffective for failing to file a meritless motion, or for failing to do a meaningless act. *Cf. State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992); *Harp v. State*, 209 S.W.3d 560, 564 (Mo. App. S.D. 2007).

Next, we examine Movant's argument that a probability of prejudice existed because there was more evidence connecting his brother and co-defendant to the crime than there was connecting him to the crime. This argument ignores all of the witnesses who placed Movant with his co-defendants and at the scene of the crimes. As mentioned in our analysis of Movant's first point, multiple people identified Movant as being at the scene with a shotgun in his hand. Further, it was part of Trial Counsel's reasonable trial strategy to have Movant and his codefendant sitting at the table "as a unified group," that neither of them committed the crimes, and their other co-defendant was making everything up. Whether to file a motion to sever is trial strategy and does not form the basis for a finding of ineffective assistance of counsel. *Cherry v. State*, 660 S.W.2d 361, 363 (Mo. App. E.D. 1983).

Movant has failed to make a particularized showing of substantial prejudice from being tried together with his co-defendant. *See Tate*, 658 S.W.2d at 946. Both Movant and his codefendant were asserting the same defense. *See Kidd*, 990 S.W.2d at 182. All of the same evidence would have been admissible against Movant if he was tried separately. *See Merrill*, 990 S.W.2d at 174 (it is a long-recognized principle in Missouri that when two people act in concert in committing an offense, the acts of either individual, in furtherance of that offense are admissible). Further, even if Trial Counsel had filed a motion to sever, the motion court found it would not have been granted. For many of these same reasons, Movant has failed to show that the result at trial would have been different if Trial Counsel had filed the motion to sever.

(Resp. Ex. J, pp. 8-10). At this stage, Smith-Nunley has done nothing more than repeat the points on appeal from his post-conviction briefing—in fact, he simply copies the pages and attaches them to his petition. He does nothing to expand on his arguments. And this Court finds nothing about the Missouri Court of Appeals' decision contrary to clearly-established federal law or based on an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d). Accordingly, this Court will defer to the Missouri Court of Appeals' decision on this issue and denies Smith-Nunley's fourth ground for relief.

### E. Trial Counsel was not Ineffective for Failing to Notify Smith-Nunley of a Purported Conflict-of-Interest. This Court Defers to the Missouri Court of Appeals' Decision on This Issue (Responds to the Fifth Ground for Relief).

In his fifth ground for relief, Smith-Nunley argues that his trial counsel was ineffective because trial counsel "fail[ed] to sufficiently inform him of a conflict of interest … arising from her firm's representation of his brother in the same trial." Smith-Nunley raised this claim during his state post-conviction appeal (Resp. Ex. H, pp. 17, 31-38), and the Missouri Court of Appeals denied it. (Resp. Ex. J, 11-14).[1] Claims that have been previously adjudicated on the merits in state court "shall not be granted" relief unless the state court's decision contradicted or unreasonably applied clearly-established federal law or resulted in an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

---

[1] Smith-Nunley procedurally defaulted on at least one aspect of this claim. The Missouri Court of Appeals noted Smith-Nunley's "argue[ment] that[,] where a conflict of interest exists at the plea bargaining stage, the movant must only show counsel actively represented conflicting interests that adversely affected the adequacy of counsel's performance." However, the court found Smith-Nunley "waived this argument because it was not included in his amended Rule 29.15 motion." (Resp. Ex. J, p. 12 n.7).

11

The Missouri Court of Appeals applied the proper standard for evaluating whether counsel was ineffective. (Resp. Ex. J, p. 4); *see Strickland*, 466 U.S. 668. The *Strickland* ineffectiveness standard is set forth above in Section C.

Smith-Nunley failed to show counsel's conduct was unreasonable or that he was prejudiced by counsel's actions. The Missouri Court of Appeals explained why trial counsel did not err in informing Smith-Nunley about a purported conflict-of-interest:

> Movant argues a reasonable attorney would have sufficiently advised him of the conflict of interest arising from her firm's representation of his co-defendant brother in the same trial.
>
> …
>
> The representation of multiple defendants is not a *per se* violation of the Sixth Amendment's guarantees of effective assistance of counsel. *Henderson*, 734 S.W.2d at 257. An actual conflict of interest arises if, during the course of concurrent representation, the defendants' interest diverge from each other with respect to a material fact, legal issue, or course of action. *Nunley v. State*, ---S.W.3d ---, 2018 WL 2409271, *3 (Mo. App. E.D. May 29, 2018) (citing *State v. Chandler*, 698 S.W.2d 844, 848 n.11 (Mo. banc 1985)). The general standard to demonstrate an actual conflict of interest at trial is that "something must have been done by counsel, or . . . forgone by counsel . . . , which was detrimental to the interests of defendant and advantageous to another." *Nunley*, 2018 WL 2409271 at *3.7 Further, The Missouri Rules of Professional Conduct state that a lawyer may represent a client if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client." Mo. R. Prof. Conduct 4-1.7(b)(1).
>
> …
>
> At no point did Movant or his co-defendant's interests diverge with respect to a material fact, legal issue, or course of action. *See Nunley*, 2018 WL 2409271, *3. Both Movant and his codefendant had the same defense and view of the facts (that they were nowhere near the scene of the crime), and neither would testify against the other. Further, there was nothing that Trial Counsel did, or did not do, to harm Movant to the benefit of his co-defendant, which she testified to at the evidentiary hearing. In their initial

12

>meeting, Trial Counsel and Movant discussed some of the issues of the same firm representing both Movant and his co-defendant. Further, Movant was aware from the very beginning of his case that the same firm was representing him and his co-defendant, and he never objected or requested new counsel. *See Smith v. State*, 716 S.W.2d 467, 469 (Mo. App. E.D. 1986) (trial counsel who represented all of the co-defendants was not ineffective where the defense was the same, and where movant knew from the very beginning but did not object or request new counsel).
>
>Movant's other arguments about the "joint" representation of him and his co-defendant are irrelevant. While Movant would have this Court believe that the husband and wife team representing two co-defendants automatically created an actual conflict here, the law says otherwise. *Henderson*, 734 S.W.2d at 257.9 Even if the representation was joint, Movant must still show there was an actual conflict of interest adversely affecting Trial Counsel's performance at trial. *Id*. He has not met that burden. And because Movant has not shown there was an actual conflict of interest, he fails to show how the outcome of trial would have been different. Further, Movant testified at sentencing that he had no complaints with Trial Counsel's performance, and that she had done a good job for him.

(Resp. Ex. J, pp. 11-14). At this stage, Smith-Nunley has done nothing more than repeat the points on appeal from his post-conviction briefing—in fact, he simply copies the pages and attaches them to his petition. He does nothing to expand on his arguments. And this Court finds nothing about the Missouri Court of Appeals' decision contrary to clearly-established federal law or based on an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d). Accordingly, this Court will defer to the Missouri Court of Appeals' decision on this issue and denies Smith-Nunley's fifth ground for relief.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Willis Smith-Nunley's petition for a writ of habeas corpus (ECF #1) is **DENIED**.

13

So ordered this 20th day of August 2020.

                                                                                                                      _____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE